Hear ye, hear ye, the sum of the court is now in session, the admiral williams holder is presiding, please have a seat. You may proceed. Thank you, your honor. My name is Bob Carica, and I'm here representing Rodney Cox, and I'm attempting to persuade the court to reverse the decision of the Illinois Industrial Commission and reinstate the decision of the original arbitrator in the case. There were only three parties that testified in this case, and one of the parties, it involves two accidents, one accident happened 6-11-04, and the second accident was 1-17-07. The interesting part that makes the case a little more difficult is my client had an MRI on 12-22-06, which was after the first accident and before the second one that showed a pretty large herniated disc. The testimony at the hearing in front of the arbitrator, I subpoenaed my client's boss of almost 20 years, a gentleman by the name of David Cease, who was the foreman on the job that signed the accident report along with a co-worker that was a witness named Ted Alizondo. I didn't think if I got the foreman to say what I needed that I would need the co-worker, which maybe was a bad decision on my part, but the foreman testified after that accident of 6-11-04, my client continually persisted to have problems in the same area of the back, and he said he tried to accommodate him with the easier jobs from that point in 6-11-04 all the way until he retired after the second accident. Counsel, how do you explain the fact that the claimant did not seek any medical treatment for the lower back pain for more than two years after the 11-20-04 accident? Well, he actually sought treatment when it first happened and then just lived with it, and that's why I thought Mr. Cease's testimony was the most important to relate it back to the 6-11-04 injury. In order for my client to lose, which he did in front of the commission, you have to believe that the foreman came in and perjured himself. He was brought in involuntarily by subpoena and testified to the facts even after his retirement. The client, Mr. Cox, testified to the same things, that he persisted with it and tried to live with it, and your honors, never tried to get a day of TTD, even continued working after the 12-6 MRI that showed the herniated disc. He still continued working until he fell down the steps in the second accident. That's the kind of person we're talking about, and it seems like we punish the people that try to do what the companies want them to do, keep working as long as you can. He even persisted working until that second fall down the steps, and that's what the testimony was. There's absolutely no other testimony. The respondent could have brought 21 workers out of the brick department down there to testify to the contrary. They didn't bring one. The only witness they have in the case is Dr. Chabot, who saw my client two years after the fact, and as your honor pointed out, there's no medical records for him to base an opinion on except that very first complaint. And he opines that he was okay after it had been resolved by that time, but based on what? He doesn't have anything to base it on. He sees him two years after the surgery almost. Well, as to that particular part of your argument, Dr. Chabot, this is a manifest weight argument that you're making here. And in your brief, the extent to which you address Dr. Chabot is a short paragraph, and you just basically say he's a well-known hired gun, and that's the extent of it. I mean, what can you tell us here as to beyond that oversimplification as to your perception of who Dr. Chabot is, why the commission was wrong in listening to his testimony? Well, your honor, let me put it this way. What did Dr. Chabot base his opinion on? He has nothing to base it on. I've got two people that were working with this guy for the four years all the way through the second accident, and he continually complained about his back. Had Dr. Chabot had that evidence, which he didn't have when he gave his opinion, that came out at the hearing by the foreman, I didn't know what the foreman was going to say until he testified. And that's why I had the witness Elizondo waiting to see if I needed him or not, which I didn't think I did with the foreman coming out as a member of management. So, Mike, what evidence or what is the basis or the foundation for Dr. Chabot's opinion? Isn't it the MRI? Well, the MRI shows that he didn't have any MRIs at all until the 12-2206 one, and that showed a large herniated disc that he had before the second accident. Now, with regard to the second accident, though, isn't it true that both Chabot and Robson each compared the December 2006 MRI with the results of the MRI taken just a few days after the January 17, 2007 accident? Neither found any evidence that the January 17, 2007 accident that the client is seeking compensation for caused or in any way worsened the claimant's preexisting disc herniation. Dr. Chabot found no significant difference between the two MRI studies, and Dr. Robson actually found the claimant's disc herniation appeared to have been worse in 2006 than it was in 2007. Isn't that some medical evidence to the contrary? No, I think they're probably right on with that, Judge. The second accident, I mean, the arbitrator found that he was aggravated, and it was after the second accident when he actually stopped working. So from that point, I think there was a temporary exacerbation. But that's why my argument is so critical to go back to the 2004 accident, because he's already got the herniated disc December before the accident in January. So I'd probably agree with their opinions that it was a temporary situation for that, because he already was going to need that surgery. Here's the only problem that I see with your accident, and you've made some, I think, logical, compelling points about the foreman and why would he commit perjury. But isn't it true that in cases such as this, it is the Commission's promise to weigh the credibility and believability with the weight of the evidence? They found, specifically, that the claimant's testimony regarding his lower back pain between June 04 and October 06 to be unpersuasive and unreliable. Can't they do that? They can, Judge, but I'll say the same thing I said about Dr. Shibbol, based on what? The only witnesses that testified were Mr. Cox, the injured party, and his foreman, both stating he was injured in June of 04 and continued to have those problems. So what the Commission based their opinion on, and I included their opinion in this record, it says the company dispensary records refute the testimony of the foreman who was retired. It wasn't his record, and reported experiencing pain when using a jackhammer. Well, they tried to throw out the foreman's testimony because in his direct testimony he said, I didn't have him use a jackhammer after that June accident. So it's almost like if his shirt was orange but it turned out to be red, we can't believe anything he said because the shirt was orange and not red. Did he seek any medical treatment for the two years after the June 04 accident? Nothing significant. Was he under any work restrictions? No work restrictions. Doesn't that weigh against his credibility? I don't think so. You said he took one for the team, so I understand your argument. He's a bricklayer, he's a tough guy, so to speak. But the Commission says, okay, if this was that serious, how come he's under no restrictions, doesn't see a doctor, doesn't have any treatment? That's a problem, isn't it? Well, it's definitely a problem or I wouldn't be here, but what are they basing their opinion on? You've got the only two witnesses that were there, direct, first-hand testimony saying he was injured from that day on. I tried to accommodate him. What are they refuting? They refute it with a dispensary record that says C said he never used a jackhammer. In that 1207 report, it says he may have been using a jackhammer. What I want to point out to the Court, if you look at the written part of that 1207 dispensary record, it doesn't say that. It relates it all back to the 04 accident, which is another thing I raised in my brief. Every company record that I've given you in my reply brief, and I apologize because there were no numbers on my original record, I put every company record in there. They all relate it back to the 2004 accident, even for the OSHA purposes. And I've included every one of those documents in there. Everybody relates it back to the 2004 accident. The foreman relates it back and says I accommodate him all that time. On what basis other than this dispensary record, this is what the Commission used to say that the foreman is not credible, that the dispensary record is not his record, says he may have been using a jackhammer when the foreman said I never gave him jackhammer jobs. He only could have done that when I was on vacation. In the absence of any complaints, any treatment, any work restrictions, your response is he's a tough guy. Well, there were complaints. That's why he's getting accommodated from June of 2004 all the way through the second accident in 2007. But he saw no treatment. Saw no treatment to speak of. That's the problem I'm dealing with. But if you look at all those records at the dispensary, and I say no treatment, if you look at the dispensary records when he did go, all those records related back to 2004 long before I was ever in the case. I don't think that was an intentional move on the part of the client. Also the Commission, I'm going to address this even though I don't think it's, why does the Commission question when my guy filed his case as long as it was filed within the three, they even criticized when the case was filed. I just find that. And here we have an arbitrator that sat there and saw the foreman testify. All they do is see paper and pull out a discrepancy in the company records that maybe he was using a jackhammer, maybe he wasn't, to throw out the foreman's testimony. I just think that's against the manifest way of the evidence. And I cited the Cook case that says when the Commission reverses an arbitrator's decision with no new evidence, that this court should take maybe a closer look at it to see what's going on there. And I don't think they have a basis to find anything that they found. It's all against the manifest way. The testimony that's credible of firsthand witnesses were my client and his foreman, a company employee that just told it like it was. What does the Commission base their decision on? The foreman is not credible. In a dispensary record, the client may have used the jackhammer when he shouldn't have. He kept doing the bricklayer work. None of this stuff is easy. But he just didn't have to do the jackhammer work. But every company dispensary record relates it back to 2004, especially when he benefits the company for the OSHA reporting instead of 07. I'll probably just... It sounds like the court knows what's going on in this case. Do I need to answer any other questions? I understand your position very precisely. Thank you. Mr. Keefe, you may respond. If it pleases the Court, Counsel, Mike Keefe on behalf of Respondent Eppley. Since the core question as to why we're here today is whether or not there's enough evidence to support the Commission decision, I'll highlight just a few of the things that I believe, based on the Commission decision, they relied upon. The first question, of course, is whether or not there's sufficient evidence to link the original accident in 2004 to the surgery performed by Dr. Robson. The 2004 accident, as you've pointed out during Counsel's argument, no treatment for two and a half years. And I understand the tough attitude of the bricklayer in wanting to continue working and all those sorts of things, but it really doesn't answer why he wouldn't say anything to a family physician, why he wouldn't say anything to, say, the chiropractor that he had seen in between for a different type of injury. That really wouldn't explain why he admitted that he bowhunted, that he hunted deer, went four-wheeling, went boating, and did all those other sorts of things. I beg to differ that the fact that he towed the company line, so to speak, therefore we should accept the proposition that the 2004 accident created the disc herniation that was not diagnosed by diagnostic study or physical exam for two and a half years. What do you make of opposing Counsel's claim that the dispensary records are objective evidence that support his claim? How do you respond to that? I personally read the dispensary records as taking history from this gentleman and writing it in. I did not take that as physician relates this current condition to the incident of 2004. I believe that as a history-taking mechanism or avenue, they must write down what the gentleman says. So you're saying it's still subject to credibility, then? You've got to believe him. I think that you would have to believe him all the way. Yes, sir, I think you would. And of course, the old adage of speaks louder than words, actions speak louder than words. I mean, I think it does ring true here. As Counsel points out, what did Dr. Cherveau rely on? It's sort of what he didn't have to rely on. He has to go on what records are available and what is produced. If there had been a smoking gun during the deposition of Dr. Perot, for example, we saw him in 2006 to say, my notes clearly reflect that this man has had all these troubles and every night he goes home from work and he has to isolate. All those things, I agree with that. Then I would agree that that period of time, you know, would be less relevant. What about the foreman's testimony? A very nice man. And I'm certain that when he sat down and raised his hand, he believed everything he said. But if you look at his actions, a particular note, two and a half years he stated that this gentleman, Mr. Cox, never asked for lighter work. He could just tell when he was having troubles. He never, ever sent him to the on-site company dispensary. If it's petitioner's position that his pain was such that he couldn't do the work for two and a half years, but he never sees a medical professional, and there's one on-site. I mean, the exact records that they want to rely on about histories is the same one he didn't go to. This is a hard job. I don't have any doubt about it. And if we were here talking about he didn't do anything for four months, I would stand in a much inferior position. But two and a half years. In addition to the fact that he does the outside activities of bow hunting and boating and all those other activities. And I think that, I say, I'm sure that that gentleman remembered it that way. But I cannot give it enough weight to rebut all of the elements that are contained in the medical records and what is missing in those medical records. It seems that the totality of what occurred from 2004 to the 2006 accident, more than enough information, more than enough evidence for the commission to reverse the arbitrator. And again, that's the core question, whether or not the commission's decision was way out of bounds. The notion that the second incident is responsible for the surgery, I think the commission likewise recognized. We know we have a disc herniation December 2006 prior to the second incident. So we know that the core issue of the surgery has already occurred. As you correctly point out, the second MRI shows no increase in any way, shape, or form. Dr. Chabot may have been our section 12 examiner, which we're entitled to have under the act. He's not hired a gun, he's what respondent gets under section 12. He's a board certified orthopedic surgeon. And with all due respect to Dr. Perot, he is not a board certified orthopedic surgeon. And he likewise agreed. I can't say for sure that that second incident in any way would have aggravated to the point of surgery. One, I'm not a surgeon, and two, I didn't see this gentleman in 2004 and 2005. He started being his family physician in 2006. The point is, Dr. Perot caused the MRI to happen in 2006, was forced, I believe, by the insurance company to do some physical therapy before that was done. But Dr. Perot's records are quite clear that prior to the second incident, but in a short period of time prior to that incident, in other words, October, November, December 2006, he had an increase in pain. Dr. Chabot, he himself, took a history from petitioner. I was walking along and I felt an increase in pain in my low back. He gave that history to Dr. Chabot during the examination. Again, relying on Mr. Seuss or however you pronounce his name, again, he's not a physician. He had plenty of other things to do. And the idea that if someone was having aches and pains and sores, he stated that others had that kind of stuff. And so I tried to switch him around some. It's not enough evidence, I don't believe, to overcome all of the contrary evidence that's in the medical records and what is omitted from the medical records by reason of his lack of treatment, his lack of lost time, his ability to go on with activities of daily living, which were pretty physical. I mean, you talk about hunting and boating. For these reasons, I would ask that the court simply affirm what Justice Harrison and the commission had found. Any additional questions? I don't believe there are. Thank you. Mr. Paripha, you may reply. Thank you, Your Honor. The issue of this boating and hunting and all that kept popping up with the commission, and I understand why. But this guy kept working as a bricklayer. I mean, they can say he hunted and fished all he wanted to. He was still down there without taking a day off, doing hard bricklayer-type work, making that same complaint in the same part of the body that the foreman remembered all the way through to after the second accident. So they can talk about that fishing and hunting, but I don't know why that's important when the guy's doing bricklayer work that's a lot more stressful and a lot heavier laboring than riding in a boat or pulling a deer out of the woods with a four-wheeler. So I don't want it to make it look like he's like a faker. You know, he's out hunting and fishing. He wasn't out hunting and fishing and getting TTD benefits like a lot of the people that we see. I'm sorry. Probably just sitting at home. I see your point. You know what I mean. He's doing the work. Somebody's off on the route, and they're being surveilled. Right. You know, I'm picking up a motor. You see them, and they say they can't work. That's not one of those. This guy kept showing up for the work, going to every place the foreman told him to do, and they noticed it. And you have to ask yourself, why didn't they bring one of the 21 people or more bricklayers down there to say that wasn't true? I just regret I didn't bring the witness to the occurrence, this Ted Elizondo that I had sitting in there, but if I was short in the hearing, he would have said exactly the same thing. The guy complained. Why didn't they bring anybody to say the opposite? You have to ask yourself that question, especially given the fact the company nurse or whoever's manning the dispensary records, they could have brought her in and said, hey, that stuff's not true. It was all put in evidence, and it's for the court to look at, and it all relates everything back to the 6-1104 occurrence. And I think I agree with Your Honor, Justice Hudson, on that. I'm not trying to say that second accident caused the surgery because, I mean, I've got that MRI in December. So that's why I think it relates back to June of 2004. Thank you. Thank you, counsel, both, for your arguments. This matter will be taken under advisement. Written disposition shall issue.